UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIVERSIFIED INDUSTRIAL MINERALS, L.L.C. | Civil Action No. 2:12-cv-02741 |
| VERSUS | JUDGE HELEN G. BERRIGAN |
| ADA CARBON SOLUTIONS (VORTEX IP), L.L.C. AND ADA CARBON SOLUTIONS, L.L.C. | MAG. JUDGE JOSEPH WILKINSON |
| | SECTION "C" |

**ORDER & REASONS**[1]

Before the Court are two motions. The first is a Motion to Dismiss filed by defendants ADA Carbon Solutions (Vortex IP) L.L.C. and ADA Carbon Solutions, L.L.C. ( "ADA"). Rec. Doc. 18. Plaintiff Diversified Industrial Minerals, L.L.C. ("Diversified") opposes this motion. Rec. Doc. 32. Having examined the memoranda of counsel, the record, and the applicable law, the motion is GRANTED IN PART and DENIED IN PART. The second motion is Diversified's motion for Partial Summary Judgment. Rec. Doc. 26. Defendants oppose this Motion. Rec. Doc. 37. Having examined the memoranda of counsel, the record, and the applicable law, the Motion is DENIED for the following reasons.

**I. BACKGROUND**

In November 2010, Diversified entered into a Technology License Agreement ("Agreement") with Defendants. Rec. Doc. 11 at 3. Under the Agreement, Diversified licensed certain technology exclusively to Defendants. *Id.* Defendants agreed to build an Activated Carbon

---

[1]Victoria Jowers, a second-year law student at Paul M. Herbert Law Center, Louisiana State University, assisted in the preparation of this Order and Reasons.

1

plant ("Facility") using this technology. *Id.* The Agreement contains three pertinent deadlines. First, construction was to be commenced by January 1, 2012. Rec. Doc. 11 at 4. In the Agreement, to "commence construction" is defined as "ACS (or one of its subsidiaries) has entered into bona fide agreements or purchase orders to purchase the In-the-Box Technology, with the scheduled delivery of the In-the-Box Technology components being such as to reasonably meet the construction deadlines of the Initial Facility." Rec. Doc. 43 at 11.

Second, if all "commercially reasonable efforts" were taken to begin construction by January 1, 2012, but construction had not begun, a construction "cure period" would be triggered. *Id.* at 10-11. The cure period grants Defendants until January 1, 2013, to commence construction. *Id.* at 11. Under the Agreement, "commercially reasonable efforts" includes "efforts to apply for all relevant permits and approvals required to build the Initial Facility and to negotiate with equipment vendors and contractors for the purchase of equipment and construction of the Initial Facility." *Id.* at 10.

Lastly, the Facility was to be completed by June 16, 2013. *Id.* Diversified alleges that Defendants did not begin construction of the Facility prior to January 1, 2012, or January 1, 2013. Diversified argues that because Defendants did not commence construction by either date, it is impossible for Defendants to complete construction by the June 16, 2013, deadline. Rec. Doc. 32 at 12.

Diversified filed suit against Defendants on April 9, 2013, alleging that the Agreement had been breached. Rec. Doc.1. Defendants, noting that the suit was filed before the June 16, 2013 deadline, filed the instant Motion to Dismiss. Rec. Doc. 18. With this Motion, Defendants seek to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6), arguing that Diversified failed to state a claim for breach of contract upon which relief can be granted. *Id.* at 5.

Diversified alleges in a motion for partial summary judgment that no material facts remain in dispute regarding their claim for breach of contract and their entitlement to specific performance. Rec. Doc. 26-1 at 1; Rec. Doc. 26-2 at 1. Diversified seeks an order from the Court requiring Defendants to specifically perform their obligations under the Agreement and damages for delay in the commencement of operations at the initial facility. Rec. Doc. 26-2 at 17.

## II. LAW AND APPLICATION

When a case is being tried in federal court based on 28 U.S.C. §1332 Diversity Jurisdiction, the federal court applies the law of the state in which the court sits, including that state's conflicts of law provisions. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L.Ed. 1477; *see also Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822 (1938) (explaining that district courts are to apply the law of the state in which they sit). The Fifth Circuit has interpreted Louisiana law, specifically Louisiana Civil Code Articles 3537 and 3540, as recognizing choice of law provisions in contracts as long as that choice does not contradict the public policy of the state whose law would otherwise apply. *Roberts v. Energy Development Corp.,* 235 F.3d 935, 938-39 (5th Cir. 2000); *see also Burbank v. Ford Motor Co.,* 703 F.2d 865, 867 (5th Cir. 1983) (explaining that even where there are strong reasons to disregard choice of law provisions, choice of law provisions should usually be upheld due to the confusion likely to occur if the provision is disregarded); *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 F. App'x 45, 53 (5th Cir. 2005) (explaining that a challenging party must meet the burden of showing that the agreement must contravene the forum state's public policy in order to invalidate a choice of law provision). The Court shall apply the substantive law of Delaware, as the parties chose Delaware law in the Agreement, and no challenge to the choice of law provision has been

3

asserted. Rec. Doc. 18-1 at 4.

## A. Standard of Review– Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal if a plaintiff fails to state a claim upon which relief can be granted. Under Federal Rule of Civil Procedure 8, a well-pleaded claim is a "short and plain statement" of the grounds upon which the pleader is entitled to relief. This statement need not contain detailed factual allegations, but demands more than unadorned accusations of harm. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2009). Under *Twombly*, a claim must contain enough facts to "state a claim to relief that is plausible on its face." *Id.* at 570. When considering a Rule 12(b)(6) motion, the court assumes that the facts pleaded are true and makes all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

## B. Analysis–Motion to Dismiss

Defendants move to dismiss Diversified's First Amended Complaint in its entirety, arguing that Diversified has failed to allege facts establishing damages, and therefore has not alleged a breach of contract claim. Rec. Doc. 18-1 at 5. Under Deleware law, to state a claim for breach of contract, a complaint "must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *Kuroda v. SPJS Holdings, L.L.C.,* 971 A.2d 872, 883 (Del. Ch. 2009) (internal quotations omitted); *see also Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, CIV. A. 13911, 1995 WL 662685, at *7 (Del. Ch. Nov. 2, 1995) (citing *Goodrich v. E.F. Hutton Group, Inc.,* Del. Ch., 542 A.2d 1200, 1203-04 (Del. Ch.1988) (explaining that failure to plead these requirements is a failure to plead an actionable breach of contract claim)). The Defendants allege

4

that because the deadline to complete construction of the Facility has not passed, Diversified has not stated a claim for breach of the Agreement. Rec. Doc. 18-1 at 12. Defendants base this proposition on the assumption that no damages can accrue before the agreed upon deadline. *Id.* Defendants also claim that Diversified did not sufficiently plead damages. *Id.* at 11-12.

### i. Damages Before the Deadline for Performance

Defendants argue that Plaintiff has no damages yet because the date for completion of the plant, June 16, 2013, had not passed at the time of the filing of this Motion. *Id.* at 12. However, Diversified's claims are based on two separate parts of the Agreement. Rec. Doc. 32 at 12. Diversified's first two claims deal with the dates provided in the Agreement for commencement of construction. *Id.* Diversified alleges that Defendants did not commence construction by January 1, 2012, and this date was never extended by the cure period in the Agreement because the defendants failed to use commercially reasonable efforts to start building the Facility. Rec. Doc. 11 at 7-8. Moreover, Diversified alleges in their First Amended Complaint that even if the cure period was triggered, Defendants did not commence construction by the date allowed for in the cure period, January 1, 2013. *Id.* at 7. The allegation that construction was never commenced is a factual allegation made by the pleader. Rec. Doc. 11 at 4-5. Therefore the Court presumes it true. If binding purchase orders were never entered into, it is plausible that the obligation to commence construction by January 1, 2012 was breached.

Further, if the cure period was triggered but construction was not commenced by January 1, 2013, it is plausible that Defendants may have breached that obligation as well. It is unnecessary to decide the merits of either theory of breach of contract on a Motion to Dismiss. A pleader may assert multiple theories of liability, "regardless of consistency." FED.R.CIV.P.8(d)(3). Diversified has

stated two breach of contract claims sufficient to survive a Motion to Dismiss regarding Defendants' obligation to commence construction.

Lastly, Defendants ask for dismissal of Diversified's claim for breach of contract regarding the alleged obligation to complete the facility, arguing that no damages can occur before the date for performance, and therefore Diversified cannot state a claim for breach of this contractual obligation. Rec. Doc. 18-1 at 12. Diversified alleges Defendants breached Section 8.3 of the Agreement by failing to build, complete, and commence operation of the Facility using the Licensed Technology no later than June 16, 2013. Rec. Doc. 11 at 5. Diversified argues that even if the cure period was invoked, it is still physically impossible for Defendants to finish the Facility by June 16, 2013. *Id.*

Diversified asks this Court for both damages and specific performance regarding Defendants' obligation to complete the Facility. Rec. Doc. 11 at 8-11. However, Delaware law supports Defendants' argument that no claim upon which either type of relief can be granted has been made by Diversified. Rec. Doc. 18-1 at 12. When a party, such as Diversified, states a claim for breach of contract before failure to perform, that claim is called an "anticipatory repudiation" claim, sometimes called an anticipatory breach of contract claim. *Principal Life Insurance Co. v. Lawrence Rucker 2007 Ins. Trust,* 674 F. Supp. 2d 562, 567 (D. Del. 2009). A cognizable anticipatory repudiation claim requires an "unequivocal statement by the promisor that he will not perform his promise." *Id.* (citing *Frontier Oil v. Holly Corp.,* 2005 WL 1039027, at *27 (Del. Ch. Apr. 29, 2005). This unequivocal statement must be a voluntary affirmative act. *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 62 A. 3d 62, 78 (Del. Ch. 2013).When it is clear that a party intends not to perform his obligation, he is "guilty" of anticipatory breach of contract. *UbiquiTel Inc.*

*v. Sprint Corp.*, CIV. A. 1489-N, 2006 WL 44424, at *4 (Del. Ch. Jan. 4, 2006). Diversified has alleged that Defendants have failed to take necessary actions toward meeting their obligation. Rec. Doc. 11 at 7-8. Supporting this argument, Defendants themselves state in their Answer and Counterclaim that they cannot be expected to go forward with construction to complete the Facility by June 16, 2013. Rec. Doc. 6 at 10. However, Diversified has failed to plausibly plead that Defendants committed an unequivocal act repudiating the Agreement. Rec. Doc. 11 at 7-8. Because the Complaint fails to plead an affirmative act committed by Defendants repudiating the agreement, the claim for anticipatory breach of the obligation to complete the Facility is dismissed.

Even if Diversified had plausibly pled an anticipatory repudiation claim, an award of specific performance would be highly unlikely. In *Carteret Bancorp, Inc., v. Home Group, Inc.*, the Delaware Court of Chancery explained the problems with granting specific performance for claims of anticipatory repudiation. 13 Del. J. Corp. L. 1115, 1123-24 (1988). The *Carteret* court explained that while a cause of action for anticipatory breach of contract may be proper when it is clear that the promisor intends not to perform his obligation, the remedy of specific performance is not appropriate for an anticipatory repudiation claim. *Id.* at 1124. Asking the Court to force performance of an obligation not yet due is effectively asking the Court to rewrite the contract, which is not appropriate because the contract represents agreed upon law between the parties. *Id.*

### ii. Royalty Payments and Other Damages

Defendants argue that Diversified fails to sufficiently plead damages because the only consideration due to Diversified are Minimum Annual Royalty payments, which they argue Diversified concedes have all been paid. Rec. Doc. 18-1 at 12. Because these royalty payments have arguably all been paid, Defendants' argue that Diversified has not been damaged by any alleged

breach, and thus Diversified's claims should be dismissed. To bolster this argument, Defendants point to Section 10 of the Agreement which limits liability by preventing recovery for "punitive, incidental, indirect, special, exemplary or consequential damages." *Id.* at 4.

However, Diversified argues that their primary reason for entering the Agreement was Defendant's promise to timely build, complete and commence the Facility no later than June 16, 2013. Rec. Doc. 32 at 12-13. Diversified argues that a breach of this obligation results in "direct damages," which the Agreement allows recovery for. *Id.* Direct damages follow immediately from a breach of contract. *Massachusetts Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London,* 2010 WL 2929552, at *21 (Del. Ch. July 23, 2010). The Court agrees with Diversified's argument that the greater financial commitment made by Defendants to construct the Facility at a cost of $12.76 million to $19.45 million dollars as compared to the lesser financial commitment of the Minimum Annual Royalty Payments supports Diversified's argument that construction of the Facility was its primary reason for entering the Agreement. Rec. Doc.32 at 13. As Diversified argues that it does not have the progress it contracted for, and will not have the Facility it contracted for, it is plausible to infer from the pleadings that Diversified has suffered damages beyond any royalty payments if the Agreement was breached. Rec. Doc. 11 at 6-8. Thus, Diversified's First Amended Complaint is not wholly dismissed as requested by Defendants. Rather, only the anticipatory breach of contract claim is dismissed.

**C. Standard of Review– Motion for Partial Summary Judgment**

Under Federal Rule of Civil Procedure 56, the court will grant a motion for summary judgment if the movant shows that there is "no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56. An issue of fact is material when its

resolution could change the outcome of the matter before the court. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986). Courts view the evidence in the light most favorable to the non-moving party when determining whether there is any issue of material fact. *United States ex re. Reagan v. E. Tex. Medical Ctr. Regional Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004).

The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact, by identifying parts of the record that show the absence of an issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant meets this initial burden, the burden shifts to the non-moving party, who must designate specific facts or show evidence to convince the Court that there is a genuine issue of material fact for trial. *Id.* at 332-334. A dispute over the existence of a genuine issue of material fact is not sufficient to preclude an otherwise proper motion for summary judgment. *Anderson*, 477 U.S. at 247-248.

### D. Analysis–Motion for Partial Summary Judgment

Diversified's Motion for Partial Summary Judgment alleges that no issues of material fact remain on its breach of contract claims against Defendants and asks the Court to grant specific performance regarding these claims. The Court has determined that Diversified's claim for failure to build and complete the Facility is an anticipatory breach of contract claim. Therefore, specific performance is not the appropriate remedy, whether or not the claim is merited. Thus, the Court shall only consider whether or not Diversified is entitled to summary judgment for specific performance of Defendant's obligation to commence construction by either the initial date of January 1, 2012 or the "cure period" date of January 1, 2013.

#### i. Commencement of Construction, January 1, 2012

The Agreement states that construction of the Facility must be commenced by January 1, 2012. Rec. Doc. 11 at 12. Diversified alleges that Defendants did not commence construction by January 1, 2012. Rec. Doc. 26 at 3. Diversified alleges that Defendants failed to enter into bona fide agreements or purchase orders to purchase the In-the-Box Technology, with the scheduled delivery of the In-the-Box Technology components being such as to reasonably meet the construction deadline of the Initial Facility. Rec. Doc. 26-1 at 3. Diversified bases this allegation on Defendants' alleged failure to contract with an engineering procurement or construction contractor for the building of the Facility or issue any binding purchase orders by January 1, 2012. Rec. Doc. 26-2 at 4-5. The burden shifts to Defendants to bring in evidence or designate specific facts showing that there is a genuine material issue regarding the commencement of construction by January 1, 2012.

Defendants have provided the Court with purchase orders for the In-the-Box Technology issued in December 2011. Exhibit G, Purchase Orders. In order to constitute commencement of construction, these purchase orders must be both binding and contain a schedule for delivery of the In-the-Box components that is reasonable to meet the deadline for final construction of the facility. Rec. Doc. 26-1 at 3. The purchase orders do not explicitly state that they constitute a binding agreement. Exhibit G, Purchase Orders. Diversified alleges that they are not binding. Rec. Doc. 43 at 9. However, the purchase orders appear to contain all the necessary elements of a binding contract. Exhibit G, Purchase Orders. This issue alone constitutes a genuine dispute of material fact that renders summary judgment inappropriate.

The purchase orders state that the vendors will proceed according to a schedule contained within them. *Id.* There is a genuine dispute over whether or not that schedule was reasonable to deliver the In-the-Box technology on time. Diversified alleges Defendants never provided the

10

vendors with notice to proceed. Rec. Doc. 43-2 at 9. Defendants have provided a timeline of their actions that includes both entering into the purchase orders and entering into change orders for the In-the-Box technology. Rec. Doc. 37 at 8-10. However, nowhere on this time line do Defendants allege that they ever gave these vendors notice to proceed. *Id.* Moreover, the payment schedule between Defendants and their vendors is To Be Decided ("TBD"), other than the percentage of payment due to the vendors upon execution and final acceptance. Exhibit G, Purchase Orders. The specified percentages only constitute fifteen percent of full payment. *Id.* The purchase orders contain a schedule that has the Engineering Release as TBD. *Id.* Regardless of whether the purchase orders are in fact binding, there is still a genuine issue of material fact regarding the schedule's reasonableness.

### ii. Cure Period

Even if construction was not commenced by January 1, 2012, there are still issues of material fact regarding the triggering of the cure period. Diversified alleges that Defendants failed to trigger the cure period by not using commercially reasonable efforts to commence construction by January 1, 2012. Rec. Doc. 26-1 at 3-4. In a case about mergers and acquisitions, the Court of Chancery in Delaware stated that "commercially reasonable efforts" included efforts that made sense in the context of the type of business the contract dealt with. *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 18 (Del. Ch. 2009). In that case, because mergers and acquisitions require timely updates during the bidding process, delaying prompt information delivery was considered to be a failure to use "commercially reasonable efforts. *Id.*; *see also Edgewater Growth Capital Partners L.P. v. H.I.G. Capital Inc.,* No. 3601-CS, 2013 WL 1789462, at *10 (Del. Ch. Dec. 6, 2012) (applying the language "commercially reaonable" to the sales context, "whether a sale is commercially reasonable

or not is a question for the trier of fact and must be determined on a case by case basis").

In this case, Defendants have provided a detailed list of the efforts they took toward applying for all relevant permits and approvals, along with a list of negotiations with various vendors. Rec. Doc. 37 at 7-10. However, at this point, there is no evidence in the record as to what constitutes commercially reasonable efforts in this type of transaction. Additionally, the determination of whether or not the cure period was triggered could necessarily change the outcome of this lawsuit. If the cure period was triggered, the Court must consider Defendants' activities throughout 2012 to determine if construction was commenced by January 1, 2013. The issues surrounding the triggering of the cure period constitute a genuine issue of material fact rendering summary judgment inappropriate in this matter.

### iii. Specific Performance as Equitable Relief

Specific performance is unlikely to be granted by this Court as equitable relief in this context. A court should not order specific performance in a construction contract where it would be impractical to carry out that order unless there are special circumstances or the public interest is at stake. *Northern Delaware Industry Corp. v. E.W. Bliss Co.,* 245 A. 2d 431, 433 (Del. Ch. 1968). The enforcement of an order for specific performance to build a massive construction project is impractical if not totally impossible. *Id.* The appropriate remedy for a plaintiff's loss caused by actionable building delays is usually damages. *Id.* When specific performance is ordered, there is an implied condition that the terms of performance must be precisely defined. *Ryan v. Ocean Twelve, Inc.,* 316 A. 2d 573, 575 (Del. Ch. 1973). Otherwise, effective judiciary supervision of compliance is impractical. *Id.*; *see also Prestancia Management Group, Inc. v. Virginia Heritage Found., II LLC*, No. CIV.A. 1032-S, 2005 WL 1364616 at*4 (Del. Ch. 2008)

(declining to grant specific performance due to the necessity of use of developer discretion rendering obligations too imprecise for judicial supervision). Specific performance will not be ordered if damages are an appropriate remedy to resolve the situation. *Id.*; *see also West Willow-Bay Court, LLC v. Robino-Bay Court Plaza, LLC,* No. 2742-VCN, 2007 WL 3317551 at *12-13 (Del. Ch. 2007) (explaining that a party is never absolutely entitled to specific performance, but rather specific performance is an extraordinary remedy to be used where money damages would fail to do complete justice).

Accordingly,

IT IS ORDERED that the Motion to Dismiss filed by Defendants ADA Carbon Solutions (Vortex IP), LCC and ADA Carbon Solutions, LLC is GRANTED IN PART and DENIED IN PART. Rec. Doc. 18.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment filed by Plaintiff Diversified Industrial Minerals, LLC is DENIED. Rec. Doc. 26.

New Orleans, Louisiana, this 29th day of July, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**